The next matter, number 22-1735, United States v. Carlos Maldonado-Vargas. Would counsel for the appellant please introduce herself on the record to begin? Good morning. Can you hear me okay? Okay. Alejandra Averde Lopez on behalf of Mr. Carlos Maldonado-Vargas. I'd like to request three minutes for rebuttal, if I may. You may. Thank you. After nine years of litigation and a mere few days before oral argument, the government acknowledges a few days ago that the conduct below that was alleged by the government did not constitute bank fraud, according to pre-indictment binding authority by the Supreme Court. It has requested that 15 out of 16 counts in this indictment be vacated, leaving the securities fraud count as the sole remaining count in the indictment. But the inclusion of bank fraud and the government's insistence on the bank fraud claim below affected and distorted the proceedings that followed, including the conduct of the trial. If the court will not dismiss the securities fraud claim on the basis of the sufficiency arguments that we've raised in our brief, we request that a new trial be ordered because of the prejudicial spillover effect that that bank fraud claim had. That argument appears in response to the government's 28-J letter. It was not argued earlier. And it was not argued earlier, although you did argue that the bank fraud conviction should be vacated. That was an obvious time to argue that there was a spillover effect. Why should we hear the argument now? Your Honor, respectfully, we understand that that argument is not an independent claim on the appeal. I believe that that goes really to the remedy of the claim that the bank fraud is not a valid claim on the appeal. This appeal includes at least five issues, and that's only because we didn't sort of separate them. Go back to the issues that you actually argued in your brief. I'm sorry. I didn't hear the question. Go back to the arguments as to sufficiency of the evidence as to the securities fraud, which you did preserve. I am far from convinced that we should hear any spillover argument at this point. Well, if I could just make one quick point about that. We would have, if this Court had vacated the bank fraud claims before the concession of the government, we would have been able to argue below. I know you had the perfect opportunity to argue it when you argued that the bank fraud had to be vacated and then the next logical argument is, and on vacating it, that also affects the securities fraud because of some purported spillover effect, but that argument was not made. So, again, can we get to the arguments you did make? Absolutely, Your Honor. We would request, however, to provide supplemental briefing on that issue. But let me move on to the arguments that are included in the brief, including the fact that the security here or the alleged security was not an investment contract and therefore not a security under the applicable securities fraud legislation. The concept, and we go into some detail on this in the reply in particular, but the concept of a security involves the bundling of assets and risks and profit sharing that really was not present in the contract that was at issue in this case. The contract that was at issue in this case had, or the contracts really, because they had different terms depending on each individual client who contracted with BPRIC, did not include any kind of profit sharing or any kind of commitment to own a part or a share of a whole. It was a loan contract that basically allowed the BPRIC to allocate the money that was provided in whatever way it saw fit, and in fact, it included, there were other entities that were involved that received some of the monies that were invested and that disbursed some of the monies that were eventually given to the clients. Counsel, let me ask you, because I think what the government says is that the evidence was sufficient for the jury to find that everyone who signed one of these contracts was invested in the business BPRIC and the investment they were making was the idea that this business knew which other businesses it made sense to invest in, and there's case law from our court that makes it clear just because it's a fixed rate of return or it's in a contract, none of that matters. The point is, are you investing money with the hope of getting a return? And there's also evidence at trial that all of the money from the individuals who signed the contract was pooled in various bank accounts and then used as a whole. So since you are making a sufficiency argument, and I know you know we have to look at the evidence and the lightness favorable to the government, I'm just struggling to understand why exactly you think the legal standard hasn't been met here, why the jury couldn't conclude that everybody was investing in BPRIC with the hope of getting a return, that their money was pooled, and therefore all the prongs of the relevant standard have been met here. What would you focus on? I think that the focus really is on the pooling, which pooling by itself is not enough, and the only allegation of pooling here is just that the money was going into the same account. But there was no commitment in the contract that would have required BPRIC to use the money that was part of the loan as a proportional share that put all of the contractors with BPRIC on an equal footing or according to some kind of structure or pro rata profit sharing. But why does it need to be proportional? Because I've read the relevant cases, and I just don't see that as one of the requirements. So I think one of my concerns is that you seem to be adding a factor to the Howey test, and that makes me worry that it would be contrary to Supreme Court precedent. There's just no discussion. There's the three factors, which I know you know. You have to invest money. It has to be a common enterprise, and somebody else needs to be the person who's creating the profits. So, again, why isn't there enough in front of the jury to conclude that this was a common enterprise? Everybody was investing in your client and this BPRIC on his claim that he could invest the money in other sort of ventures and give everybody a profit. Why isn't that enough? The problem is that the contract does not say that they are investing in BPRIC. The contract says that it is a loan, and BPRIC retains the discretion to do with that money whatever it understands, whatever business it wants. But doesn't the conspiracy nomenclature doesn't matter, right? It's very clear that labels don't matter. So the fact that they said it was a loan or it's any of the other terms that may be used, at the end of the day we have to do a functional analysis. The jury has to do a functional analysis. So this court in SG Limited, for example, found that there was a flat guaranteed 10 percent return that applied to all company shares, and already the word shares gives you an idea of something that was not happening in this case. And I think that what the court needs to do is look at the evidence that the government presented and where the evidence is that there was some kind of commitment to put all people who were in contract with BPRIC on an equal footing according to some structure, whether it's a pro rata share, a proportional share, or some kind of structure that put them all each in relationship with another. The people that the government alleges were investors and the people who were in contract relationship with BPRIC. And that doesn't happen. There is a basically individual relationships with BPRIC, but the people who were contracting with BPRIC were not in relationships with one another. The effect on one person did not affect contractually or with what the commitment that was made. They were not in a relationship with another. In real life it plainly did. I'm sorry. I said in real life it plainly did because this was a Ponzi scheme. Is it your position that the jury did not have sufficient evidence to conclude it was a Ponzi scheme? Yes or no. I think that the jury could have made a determination that there was a Ponzi scheme, but the fact that it is a Ponzi scheme does not necessarily show horizontal. Okay, under SG we said explicitly that Ponzi schemes are archetypal horizontal pooling. And in SEC versus Edwards quoting the Howey case, the definition of investment contract is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits. And you are saying that this jury verdict has to be vacated even though the evidence permitted the jury to find this was a Ponzi scheme and the profits from the income from the later sales was used to provide returns on investments from the earlier sales. The SG limited indicated that Ponzi schemes typically fit the pattern. And the reason it said it, the reason it gave. Okay, what is different about this? What SG limited said was that it typically fits the pattern of a security or a horizontal commonality. What is different about this? You say it is the contract and the labels in the contract. Your Honor, if you would just bear with me, I am trying to address your question. What SG limited said was that Ponzi schemes would typically fit the definition of horizontal commonality because they include a profit sharing and risk sharing that is not present, that was not present in the contract in this case. That is really the fundamental. Counsel, what I hear you saying is that the investors need to have an understanding that what they are dealing with are securities. They don't have to know that the name securities applies, but that they have to have that understanding. It has been posited to you that our case law does not require that, but that if the actual scheme involves securities, that is sufficient. So what is your best case for the proposition that what matters is what the person who has put the money forward, the investor, thinks that it is a security? I think that SG limited really does make a good case for the information that was provided to the customer that explained the structure of what was happening, really hewed to the sense of a security in terms of being a share in a profit sharing and an overall bundle. Tell me why it matters. Why that matters? Because that is what makes it a security. I mean, fundamentally, there could be fraud. I mean, there could be a finding of fraud. If you have horizontal pooling, it is a security. I'm sorry? I always thought the law was, as to prong two on how we, if it is a horizontal pooling, that meets that element. I have never understood that it is what is in the mind of the investor. So tell me why it matters. Well, let me try to give an example. If there is an online sales store and two different people buy from that online sales store and purchase an item to get sent to them and the sales store goes belly up, that money may have been pooled, but that doesn't make whatever it is they bought a security. Why not? And they may not get their product. Excuse me. Why not? Why doesn't it make a coffee mug that they may have bought online a security? No, no. What you just set up was a scheme that does involve securities. It is just that the person making the purchase didn't know that. I'm trying to get from you why it matters, why one is a crime and the other is not. Because the crime is to have a misrepresentation. It sounds like what you're saying is that if you pitch it as a security, as a security offering, but the actual security offering is something different than what you pitched it as, that might be sufficient. But if you pitch it as not a security, but in fact it is, that's not a crime. Do you agree with that statement? Is that what you're saying?  I think that the operative moment is the point of sale and what is being proposed to the person. Well, that's what I just said is your position. Yes. Okay. I think that that has to be it because otherwise you could be buying, you know, a coffee mug and have no idea that you're buying something, but there's some other structure behind the scenes. It's the sale and purchase of the security, which is the issue. But isn't the problem with the hypothetical that you're offering, it's one of the other prongs of the test, which is that the person doing it has to have an expectation of profits. It's when I buy a coffee mug, I don't expect my coffee mug to give me income. And so I think what I'm still struggling with is you talk about shares and proportional interest, but Edwards is very clear that a fixed rate return, like, you know, something like this, where somebody's promised 25 percent or 50 percent, whatever it was in the particular contract, that can be a security. So it doesn't have to be a share. It just requires everybody's money to be put together to pay the person back. If I may, if I may so, you can substitute my coffee mug for a piece of art, which could be a type of investment that you would expect to profit from eventually. But taking Edwards, Edwards really was a proposal for a business and had a structure that had a fixed rate of return but had a structure that expected the business to actually prosper. And so fundamentally there, there was, and there were, although it was nominally structured in a way where the individuals who were in contract in Edwards did not have a, or it was nominally about a specific phone booth, it really wasn't at the end of the day. It was like sort of a proportional over the course of all the phone books. So the whole, the whole business had to be well or whatever so that the, there was no, nothing in the contract in Edwards showed that if something happened to one phone booth, well then that guy was out of luck. That's not the way the business was structured. The business was structured so that at the end of the day it was all sort of shared by all the people who were participating in that business. Thank you. I didn't get a chance to touch upon the loss matters, but I'll have a chance perhaps on the rebuttal if there are any questions. Thank you.  Thank you, counsel. At this time would counsel for the affilee, United States, please introduce herself on the record to begin. Thank you. Catherine Allen on behalf of the government. There's sufficient evidence here from which the jury could find that the contracts at issue are securities. As we've been talking about, there are two ways, sorry, the only disputed element is whether it's a common enterprise. As we've been talking about, there are two ways to view this. One is through the lens of what was being sold to the investors, and the other is through the lens of the economic reality of what was being sold. Either way that you look at it, what was being sold here were investment contracts. As mentioned, in terms of what the investors were being told, there was a lot of evidence at trial from investor testimony that what they were told they were buying into is that they were investing in BPRIC for BPRIC to invest their money in a portfolio of businesses. There was testimony that they knew that their money was being pooled for the common purpose of supporting the BPRIC businesses. There was testimony that the investors thought the returns that they would receive were from the earnings of the BPRIC companies. So all of that goes to show that if you look at it through the lens of what was being told to the investors, they were investing in a common enterprise and it counts as a security. I see. We've just had a long discussion about whether the test turns on what the investors understood, which would seem to turn on what representations were made to them. And the discussion more or less pointed in the direction that that is not what the test is for securities. So you're saying that is not the test. The real test is the economic reality. But if they were told that it was essentially an investment, that's enough? Yes, Your Honor, courts have looked at it both ways, but the Supreme Court has made very clear that the labels that the parties use are not dispositive, that what matters is the economic realities of the transaction. If you look at it through that lens, this is a classic Ponzi scheme. As this court explained in SG Limited, Ponzi schemes involve common enterprises precisely because the way a Ponzi scheme works is that all of the investor money is pooled together, and then that money is used to pay out the earlier investors purporting to be returns. And so those investors are sharing in the profits and risks of the Ponzi scheme because any return that they get is dependent on money coming in from new investors. So therefore, if these investors were never told that their money would be pooled, would that make any difference to the outcome of this case? I think it would be affirmed either way. I guess the reason that I also brought up what the investors were being told is that in some cases courts have also made the point that someone who is selling securities and purporting to sell securities should also be held to the lies that they are telling their investors. They shouldn't be able to escape the securities laws because it is— My memory may be wrong, but I thought only a few of the investors said that they got representations that in essence the money was going to be pooled, but that a number of them said no such representations were made to them. Is that correct? I'm sorry, Your Honor. I don't recall whether any investors specifically said that they did not receive those representations. I know that there are some investors— Yes, but it would be the government's burden to show they received such representations. Just to be clear, we don't think that we— the government's position is not that we have to prove that they received those representations. But you're asking this court to make law. Yes, Your Honor. The simplest way would be to say that if you look at the economic realities of this transaction, it is a Ponzi scheme, therefore they were investing in a common enterprise, and these are securities. Okay. Counsel, can I ask you, because both today and at the trial, the government relied very heavily on the argument that this was a Ponzi scheme and therefore an investment contract, and therefore a conviction was appropriate. But is there—what was the evidence below on this being a Ponzi scheme other than through the witness whose testimony and summary exhibits have now been challenged? I was hoping you could address that because it does seem that the summary exhibits contained substantial amounts—were based on substantial amounts of hearsay, which is not permitted under the rule. The summary has to be based on evidence that is otherwise admissible, even if it hasn't been admitted. So can you address that? Does the government agree that there was hearsay here and therefore an error in admitting those exhibits? Your Honor, first, the key point of the exhibits had to do with the math of adding up the money coming in. If, for example, the— Let me just pause you there. I know that was one of the key points, but I thought one of the other major reasons that the government introduced this witness and these exhibits was to show that there was no actual business activity going on, that all that was happening was investors were providing money, it was going into a bank account, and anyone who got paid just got paid with the money of an investor that came after them, and there was no legitimate business activity. That, to me, from reviewing everything, seemed to be the thrust of this testimony, and that's why I'm asking. It seemed like it was a critical part of the government's case that this was, in fact, a Ponzi scheme. So if some of that or all of it was admitted erroneously, how are we supposed to grapple with that? Well, Your Honor, so just to explain the point that I was trying to make, one of the key exhibits showed that 93% of the inflows coming into the PPRC account were coming from individuals. You're correct that when that was introduced, it was labeled as coming from investors, but the witness testified that if that word was changed to creditors or to someone who loaned Maldonado money, that the analysis would be the same. The key point is that 93% of the funds that were coming in were coming in from individuals, and the witness also testified that there was no money coming in that was profit from any of the companies. There was also... But why is that sort of the right way to look at it? Because let's take away the label, whether it was an investor or a creditor or an individual, let's just talk about individuals. In order for the witness that the government put on who was not qualified as an expert to confirm that this money was coming in from an individual and then, you know, that money was pooled and then just paid forward, she was relying on interviews, hearsay statements by these folks who had been interviewed by various people, and she didn't conduct those interviews. I mean, it would have been hearsay regardless, and she's not an expert, and that's how she figured out that the money came from individuals, went into the account, and then went out again in what you described as a Ponzi scheme. So, again, isn't she relying on hearsay either way? Well, Your Honor, my understanding is that, you know, she went through 10,000 bank transactions, which would list, you know, where the money was coming from. It's true. She testified that she based her determination of whether someone was an investor based on the totality of the circumstances. That did include interviews that she was present for. It also included things like the memo line of the check and other documentary evidence. But, again, there was no evidence that any of the money – she testified that none of the money was coming in from the purported businesses, and I just want to point out that there was other evidence as well regarding the fact that some of the businesses were never incorporated under the laws of Puerto Rico, that some of them never had any money or only a couple hundred dollars in their bank accounts. Before you go to the other businesses, I do just want to clarify. Does the government agree, though, that she relied on hearsay? The summary exhibits include hearsay information. I would say that her labels in the summary exhibits, some of them were – for some of the people, they were based on interviews that she was present for that were – Based on out-of-court statements introduced. Yes, Your Honor, but the out-of-court statements themselves were never introduced at the trial. And, again, if we're talking about the claim about the evidentiary exhibits, we're talking about the abuse of discretion standard here, and this court has emphasized that district courts really have sort of the highest level of discretion with determining whether to let in exhibits like this. And when you're talking about 10,000 transactions, in order to summarize that, there has to be some categorization and some amount of labeling. For example, her determination that when he spent money – when Maldonado spent money on his children's schooling, you would have to look at the name of where the outflows were going to and determine that that was a school. And there is some sort of inherent amount of categorization and labeling. Counsel, I understand, but, again, relying on a witness statement is hearsay. So I'm just wondering – I don't quite understand what you're – when you say label, of course the labels don't matter, but the trial court can't introduce hearsay in a summary exhibit. Yes. Frankly, I don't think either side has adequately briefed this issue. If it's hearsay, it's inadmissible. If it's inadmissible, it shouldn't have been part of the summary. And she does not object – pardon me – counsel does not object to the entire summary, just to certain what could be called labels, but could also be considered evidence in the summaries. But it wasn't clear to me that this was being offered for the truth of those labels or whether it was more like our Apollon case where we say the charts in certain respects summarized documentary evidence that corroborated witness testimony. If that's what it was, then maybe these were admissible, but the issue doesn't seem to have been joined with quite the precision we would have liked to have seen. I'm sorry for that, Your Honor. Just to pick up on one of the points that you mentioned, it's true that she does not contest the admissibility of the exhibits in total. She does not contest that the bank account information was reliable or any of that. It's merely the labels. And to the point that you said about whether it's being offered for the truth of the matter, the fact that she testified that if you change the label, the analysis wouldn't be any different, I think, illustrates that that's not what it was being offered for here. If we had called these people creditors, the sums would have been the same. Still, 93% of the money coming in is coming from creditors, people who loaned Maldonado money. It's coming from individuals. It's not coming from the businesses that he had told these people he was investing their money in. And that shows that it's a Ponzi scheme along with the other evidence that the government introduced that showed that some of these, just looking at the actual bank accounts, that some of these companies never had more than a couple hundred dollars in the bank accounts, that some of these companies were never registered or they didn't file the required yearly filings. I think there's other evidence that these were sham businesses and that what was really happening here was he was running a Ponzi scheme. Did all that other evidence come in through this same witness or did it come in through other witnesses? No, Your Honor. I don't have the witness's name, but I believe there was someone who worked for the government of Puerto Rico that through which different sort of like certificates of incorporation and things like that were introduced and some of them were, there were questions about whether they filed the required yearly filings and they didn't, so that was through a different witness. The bank account statement that I referred to did come in through her, but I don't think had any of the, in terms of two of the companies, I think it was Glorimar Fashions and one of the other companies that only had a couple hundred dollars in the bank accounts, and those, you know, she was just reading from the bank accounts, so I don't think that the defendant has challenged those in the same way that she's challenged these summary exhibits. If there are no other questions, I just wanted to make, you know, one last point on the spillover issue. The government's position. Counsel, I actually, I had a question on the loss calculation for sentencing purposes. I don't understand what methodology the district court used. Can you either explain it to me or tell me why we shouldn't remand for an explanation? Sure, Your Honor. The government, I think it's most clearly explained, well, sorry. The district court relied on the PSR, which used the $3.7 million loss number, and the government had submitted its docket 149, and exhibit A of docket 149 shows the math in terms of how you get to the $3.7 million number. I can walk through that if you'd like. It's based on one of the summary exhibit 306 that was admitted at trial, which shows the inflows and the outflows from the BPRIC accounts for the investors, and this document was limited only to the confirmed investors, and so the difference between, I think there was, sorry, I have it written down here. There was $5.5 million in inflows minus $2.3 million in outflows is $3.2 million of net loss, but then the guidelines, section 2B1.1, comment 3F4, states that when a Ponzi scheme is involved, that courts are not supposed to reduce the loss by the gains that some investors enjoyed, and so then in the chart that the government submitted as docket 149, exhibit A, so then you add back in the $560,000 of gains that certain investors received, and that gets you up to $3.7 million. Your Honor, may I just quickly finish the spillover point that I was making before, which is just the government's position is that these new spillover claims are not properly before the court because they weren't included in the defendant's opening brief. Do you think there's any statute of limitations issue with bank fraud count gone for the securities claims? No, Your Honor, just for two reasons, and again, this has not been briefed, but just on a quick review of it, the defendant made the argument in district court that a five-year statute of limitations should apply to the securities fraud counts, and the district court rejected that argument, so he has not appealed that statute of limitations holding. In the letter, the defendant cites 18 U.S.C. 3301, which we think is the proper statute of limitations. That's a six-year statute of limitations, and so all of the specific transactions that are alleged in the indictment under the securities fraud count fall within that six-year statute of limitations, so we don't think that there's a statute of limitations problem here. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a three-minute rebuttal. Thank you. Alejandra Bair Lopez on behalf of Mr. Carlos Maldonado Vargas. On the point of the summary evidence, and I'm very sorry if it appears that it's not sufficiently explained, but I do think that our briefing points out all the particular parts of our argument, and they're presented there. We try to be very respectful of this Court's advice that we should be succinct and efficient with our arguments. There's a lot of arguments. There was a lot of material in this trial. I do think that carefully looking at our argument with respect to that part in our original brief and in particular in our reply brief really points the way to what the problem is, and the problem is not just a problem of labels. The problem is that the witness was imposing labels, was making a judgment about whether or not this or that transaction came from an investor, right, which he called an investor, which was an ultimate issue for the jury but was included in these exhibits as a foregone conclusion. The government just said there was also testimony that if you didn't use the term investor but you used the term creditor, it would be the same. So how do you deal with that? Because we were arguing to the jury that this was not an investment contract. So that was a conclusion that was already made. But besides that, the witness who put together this summary evidence was making judgments about those transactions, sometimes based on an interview but many, many times just based on a memo in the check, in the check of the transaction they were looking at, without explaining to the court why it understood that whatever the check said, which was not part of the summary, it could have been part of the summary. They could have done an actual summary that included what the memo line in the check said, but that's not what it said. It just said memo. And there was no explanation as to why that witness understood that whatever it is the check said made it so that that memo and made it reasonable or reliable to judge that that memo showed that that was from a person who was in contract with BPRIC. There are a good number of people for whom there is no evidence that there was a contract with BPRIC, which are labeled in these summaries as investors. And there is another entire category of people which were labeled as potential investors based only on the amount of money that was being transacted. So these are conclusions and opinions that were chewed, swallowed, digested, and given to the jury as conclusions that were already part of the evidence. And this is really a way in which this summary evidence, if I may finish this point, included, embedded in it, all the arguments that the government was making. The government gave them a persuasive document, multiple persuasive documents, and the documents that came down summarizing the previous documents, the longer documents, also included all of those embedded opinions and conclusions that were made by that witness. I just briefly wanted to point to NSG Limited, a quote at page 52 that says, that the complaint can fairly be characterized as either a Ponzi or pyramid scheme and that it provides the requisite profit and risk sharing to support a finding of horizontal commonality. So that is part of the decision in that case. I know if you have any questions about the loss determination or about any other issue, I'm happy to answer them, but I do see my time is up. Thank you. Thank you. Okay, thank you. Thank you, counsel. That concludes the argument in this case.